# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| JAYN ROBISON | CIVIL ACTION NO. 05-1581 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CARDIOLOGY ASSOCIATES, L.L.C. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are a Motion for Summary Judgment filed by Defendant Cardiology Associates, L.L.C. (Record Document 63) and two Motions for Partial Summary Judgment filed by Plaintiff Jayn Robison (Record Documents 64 and 65).  Cardiology Associates, L.L.C. ("Cardiology Associates") moves for summary judgment, arguing that Plaintiff Jayn Robison ("Robison") possesses no valid copyright because (1) the collection letters at issue are not subject to copyright, and (2) she failed to provide proper notice of copyright when she used the letters in the 1970s.  Conversely, Robison moves for partial summary judgment on the issues of originality and copying, maintaining that (1) her collection letters contain the minimum degree of creativity required to satisfy the originality standard, and (2) Cardiology Associates copied her letters within the meaning of 17 U.S.C. § 106.  For the reasons which follow, Cardiology Associates' Second Motion for Summary Judgment (Record Document 63) is **DENIED**; Robison's Motion for Partial Summary Judgment with Regard to Copying (Record Document 64) is **GRANTED IN PART AND DENIED IN PART**; and Robison's Motion for Partial Summary Judgment with Regard to Originality (Record Document 65) is **GRANTED**.

## FACTUAL BACKGROUND

In September 1990, Robison registered a series of collection letters with the United

States Copyright Office and obtained a Certificate of Registration ("certificate").  See Record Document 63, Exhibit J.  On the certificate, Robison listed 1986 as the year in which creation of the work was completed.  See id.  She did not complete the lines designated for date of first publication.  See id.  These lines were to be completed only if the work had been published.  See id.  These copyrighted letters are now the subject of the instant action for copyright infringement.   The letters are attached to Robison's complaint and are also exhibits in the summary judgment record.  See Record Document 1, Exhibit A; Record Document 65, Exhibit A.

Based on Robison's deposition testimony, Cardiology Associates contends that she drafted and published the letters at issue in the 1970s while employed with Hollier & Marks, a medical group.  See Record Document 8, Exhibit I at 29-30.  This time frame is well before the 1986 date reflected in the certificate and the 1990 copyright date.  However, in her deposition, Robison also stated that the letters she copyrighted in 1990 were created in 1986.  See id., Exhibit I at 28.  Likewise, in a later filed affidavit, Robison attested that the copyrighted letters were not in existence when she worked for Hollier & Marks and that she did not publish the letters prior to the time she filed her copyright application.  See Record Document 67, Exhibit 2.  Below are pertinent excerpts of Robison's deposition:

> Q.    Let's go through some of the allegations of that complaint. . . .  Okay. This lawsuit revolves around a series of letters that you have allegedly written; is that correct?
>
> A.    That is correct.
>
> Q.    When did you write those letters?  When did you create those letters?
>
> A.    1986.
>
> Q.    When in 1986, do you recall?

A.    No, I don't.

Q.    And just –

MR. BENSON:  I want her to rely on her memory right now.

BY MR. BENSON:

Q.    Ms. Robison, if you would don't refer to any materials. . . .

Q.    . . . So sometime in 1986.  Was it when you were working for LIG or after that?

A.    It could have been before, it could have been after, I do not know.

Q.    Okay.  What prompted you to write these letters, to draft these letters?

A.    For the purpose to help – I had drafted the letters before then, and I had used them.

Q.    Well, hold on.  I asked you a minute ago when you created these letters and you told me 1986; is that not correct?

A.    Formally 1986.

Q.    My question –

A.    Then I don't know, a period of years before that I have been drafting working on them, so as far as giving you an exact date I cannot give you that.

Q.    Can you give me an approximate date?

A.    In the '80s.

Q.    Early '80s?

A.    I'm sorry, I just don't have a date for you.  I can't pull one out.

Q.    So you drafted these letters after you worked for Hollier and Marks, correct?

A.    I used them while there, so it had to have been before then.

Q.    So you drafted these letters in the '70s?

A.   No.

Q.   Okay.  Well, follow me. Didn't you cease employment with Hollier and Marks in 1980?

A.   Okay.  I see.  Yes, it would have been the '70s.

Q.   When you wrote these letters, were you employed with Hollier and Marks?

A.   I was.

Q.   Did you write these letters to help Drs. Hollier and Marks collect their accounts receivable?

A.   I wrote them for my own personal use and satisfaction.

Q.   You didn't – did you use them in your employ with Hollier and Marks?

A.   Yes.

Record Document 8, Exhibit I at 28-30.[1]  Further, Cardiology Associates claims that Robison used the letters in the 1970s without placing the appropriate copyright notice on them.  It also argues that Robison falsely swore on the application for registration of copyright that the letters were created in 1986 when, in fact, they were created in the 1970s.

In September 2001, Robison was hired by Cardiology Associates as an administrator/office manager.  See id., Exhibit I at 16.  Dr. Ralph Baucum served as her supervisor.  See id., Exhibit I at 17.  During this employment, Robison placed one or more of her collection letters into Cardiology Associates' billing computer software.  See id., Exhibit I at 39-40.  According to Robison, she advised Cardiology Associates that her

---

[1]This exchange occurred at pages 28-30 of the deposition transcript.  Finally, on page 48 of the transcript, defense counsel showed Robison "these letters" and handed her a copy of the complaint and attachments.  Record Document 8, Exhibit I at 48.

letters were copyrighted at this time.  See id., Exhibit I at 40.  Cardiology Associates used Robison's collection letters in the course of its collection efforts and such use was with Robison's knowledge and consent.  See id.

On Friday, April 30, 2004, Cardiology Associates terminated Robison.  See id., Exhibit I at 16.  Shortly after her termination, Robison requested that Cardiology Associates stop using her collection letters.  See id., Exhibit I at 43-44.  Cardiology Associates agreed to this request.  See id., Exhibit I at 44.  According to Robison, she called Dr. Baucum of Cardiology Associates on the Monday following her termination and requested that Cardiology Associates stop using her letters and return hard copies of her letters that she had left in her office.  See id., Exhibit I at 43.  Dr. Baucum confirms this phone call, but can only place it to within a month of Robison's termination.  See Record Document 64, Exhibit A at 20.  Notwithstanding, there is no dispute that Robison requested that Cardiology Associates cease using her collection letters sometime in May 2004.  Despite such request, Cardiology Associates did not contact its computer service about changing its collection letters until September 2004.  See id., Exhibit C & Exhibit D at 21-23.

Between May 2004 and January 2005 and subsequent to Robison's request to stop using her collection letters, Cardiology Associates distributed at least eight six collection letters to its delinquent accounts.  See Record Document 64-3 at ¶ 5.  The only collection letters on Cardiology Associates' computer system during this time frame are contained in the record at Record Document 64, Exhibit E.  See id. at ¶ 6.  Cardiology Associates admits that the letters contained in Exhibit E are the letters it sent out to its patients between May 2004 and January 2005.  See id. at ¶ 7.  Robison maintains that the letters contained in Exhibit E are substantially similar to two of her collection letters, which are

contained in the record at Record Document 64, Exhibit F.

## PROCEDURAL BACKGROUND

On September 5, 2005, Robison filed the instant action against Cardiology Associates alleging copyright infringement.  See Record Document 1.  Cardiology Associates filed its answer on September 16, 2005, denying the allegations set forth in the complaint and asserting defenses. See Record Document 5.  Cardiology Associates filed a first motion for summary judgment.  See Record Document 8. The Court denied the motion, finding that summary judgment was not appropriate at that stage of the litigation because there was insufficient clarity of fact on issues material to the case.  See Record Document 21.  The Court noted that further discovery may resolve some of the factual disputes in this case.  See id.  The instant motion for summary judgment and motions for partial summary judgment were filed on October 31, 2007.  See Record Document 63-65.

## LAW AND ANALYSIS

**I.      Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002).  If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## II.    Copyright Infringement.

For Robison to prevail on her claim of copyright infringement, she must show (1) ownership of a valid copyright and (2) unauthorized copying.  See Peel & Co., Inc. v. The Rug Market, 238 F.3d 391, 394 (5th Cir. 2001).  Cardiology Associates has moved for summary judgment based on the first element, ownership of a valid copyright.  Robison has moved for partial summary judgment on the issues of originality, one requirement of a valid copyright, and copying.  The Court will now examine the two elements of copyright infringement separately.

### A.    Ownership of a Valid Copyright.

"Ownership of a valid copyright is established by proving the originality and copyrightability of the material and compliance with the statutory formalities." Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1995) (internal citations omitted).[2]

---

[2]"Plaintiff's ownership . . . breaks down into the following constituent parts: (1) originality in the author; (2) copyrightability of the subject matter; (3) a national point of attachment of the work . . .; (4) compliance with applicable statutory formalities; and (5) (if plaintiff is not the author) a transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff as the valid copyright claimant." 4-13 Nimmer on Copyright § 13.01 (2007).  Constituent parts 3 and 5 are not pertinent to the instant

"Plaintiff bears the burden of proof on the *prima facie* case, and Defendant bears the burden as to defense."  3-12 Nimmer on Copyright § 12.11.  Title 17 U.S.C. § 410(c) provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work ***SHALL constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate***. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c) (emphasis added).  While the certificate constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate, the presumption is rebuttable.  Norma Ribbon & Trimming, Inc., 51 F.3d at 47.

In this case, Robison has presented her certificate, stating that 1986 was the "year in which creation of [her] work was completed" and that her work had not been published. See Record Document 63, Exhibit K.  The Court must accept Robison's certificate as *prima facie* evidence of the validity of the copyright, including originality, copyrightability, and compliance with statutory formalities.  Further, the Court must also accept the certificate as *prima facie* evidence that Robison created the letters in 1986 and had not published the letters as of 1990, both of which are facts contained in the certificate.  The Court will now determine whether Cardiology Associates has rebutted the Section 410(c) presumption.[3]

---

matter.

[3]Relying on Robison's deposition testimony regarding use of collection letters in the 1970s, Cardiology Associates argues that "since plaintiff published these letters more than five years before she registered them with the Copyright Office, she is not entitled to any presumption of validity under the Copyright Act."  Record Document 63-2 at 23.  Yet, as noted above, Robison stated in her certificate that she created the letters in 1986 and had not published the letters as of the date of her copyright application in 1990.  The Court must accept the certificate as *prima facie* evidence of these facts.  Cardiology Associates' contention that the letters were created and published in the 1970s will be entertained in

### 1.    Originality.[4]

Robison's certificate is prima facie evidence for everything it contains, including the fact that she authored the letters.  Thus, the burden shifts to Cardiology Associates to demonstrate that she copied from prior sources and was not original.  See 3-12 Nimmer on Copyright § 12.1.  If Cardiology Associates offers such proof, then the burden shifts to Robison to overcome that evidence.  See id.  However, it is not "sufficient for [Cardiology Associates] to offer evidence of prior similar works in the absence of evidence that [Robison actually] copied from such works."  Id.

Originality "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345, 111 S.Ct. 1282, 1287 (1991).  Courts have held that "the requisite level of creativity is extremely low; even a slight amount will suffice" and most works "make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be."  Id.  Most importantly, the Feist court distinguished originality and novelty:

> Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, assume that two poets, each ignorant of the other, compose identical poems.  Neither work is novel, yet both are original and, hence, copyrightable.

Id. at 345-346, 111 S.Ct. 1287-1288.

To disprove originality, Cardiology Associates argues that Robison copied from

---

the Court's analysis of whether Cardiology Associates has rebutted the Section 410(c) presumption.

[4]The Court is entertaining cross motions for summary judgment on originality.

earlier letters in the public domain, that she added nothing of any significance to the collection letters already existing in the public domain, and that her letters do not contain any ideas, but rather are tools used to attempt to collect debts.[5]

Again, Robison's letters are contained in Record Document 65, Exhibit A.  From her deposition testimony, it is clear that Robison had read other collection letters.  But with her letters, she sought to create collection letters that achieved the goal of collecting the account, but were also sympathetic, unoffending, cooperative, and non-threatening.  See Record Document 8, Exhibit I at 49-50.  According to Robison, she was "trying to give the patients options without making them feel threatened."  Id., Exhibit I at 51.  In the letters, Robison expressed that the account is now due, we realize that you (the patient) have hardships, we realize that real life happens, and we are willing to work with you to settle the account.  See id., Exhibit I at 49.  Robison sought to achieve these goals with her terminology and phraseology.  See id., Exhibit I at 57.  Phrases from her letters include:

- We regret having to take these measures and have tried working with you in order to clear this account.

- We can at this time still make financial arrangements with you to clear the account and cancell [sic] legal procedures.

- It is my intent to work with you and to set up a payment schedule that is reasonable and financially accepted to you. I do not want to cause

---

[5]This final argument is easily dispelled.  Robison's letters clearly and concisely convey numerous ideas:  an assertion that the recipient owes money to the sender; a request for payment; a non-threatening and cooperative approach to the debtor; and a threat of action adverse to the debtor if payment is not forthcoming.  See Record Document 73, Exhibit A.  Further, defense expert Dr. Perlman identified fifteen separate ideas in Robison's letters.  See Record Document 80, Exhibit A at 14-18.  Robison is not claiming a copyright in these ideas, but rather in the particular way that she expressed the ideas in her letters – that is, the actual language that she used, which is subject to copyright.  See Mazer v. Stein, 347 U.S. 201, 217, 74 S.Ct. 460, 470 (1954).

any undo [sic] financial stress however this account needs to be taken care of.

•      Your account has been presented to me in order to try to establish [a] payment plan suitable to you and your financial obligations in order to clear the account.

Record Document 65, Exhibit A.

### a.      Independent Creation by the Author.

Robison has consistently testified that she independently created the letters. Likewise, defense expert Dr. Alan Perlman, a Ph.D. in the field of linguistics, testified in his deposition that he did not believe that Robison's letters were directly copied because he did not see "specific and point-for-point similarities in the actual wording."   Record Document 65, Exhibit D at 21-22.

Cardiology Associates has come forward with no competent summary judgment evidence that Robison copied her letters from earlier letters.  It is attempting to establish that Robison copied from the public domain by arguing that her works are substantially similar to works in the public domain.  Such an inferential attack on originality appears to be permissible.  See Boisson v. Banian, Ltd., 273 F.3d 262, 269-270 (2nd Cir. 2001)(noting that scholars disagree whether inferential proof of copying by the copyright holder is permissible and declining to decide the issue in view of the defendant's lack of evidence). Under the case law, the necessary access must have taken place prior to the time Robison created her work.  The Boisson court reasoned:

Defendants also failed to show that [public domain works] similar to [Plaintiff's work] were so widely disseminated or known as to infer that Boisson reasonably would have seen one before designing her own works.

Boisson, 273 F.3d at 270.

In our case, the only alleged pubic domain letters identified by Cardiology Associates are contained in Exhibit L of Record Document 63.  A cursory review of the letters reveals that the language appears to be dissimilar to Robison's letters. Notwithstanding, the public domain letters are the result of a Google.com search and Cardiology Associates has provided no competent summary judgment evidence as to when the letters contained in Exhibit L were created.  Some of the public domain letters contain no date; some are dated October 29, 2007, presumably the date the Google.com search was run; and others are dated 2003 or 2004.  Thus, there is no way to determine if these public domain letters were even in existence prior to Robison's creation of her letter, whether the creation occurred in the 1970s or in 1986.  Further, there is no record evidence as to the content of the public domain as it existed prior to the creation of Robison's letters.  Without proof that Robison copied from public domain letters, the mere existence of similar works cannot defeat the originality of Robison's letters.  See Feist Publications, 499 U.S. at 345-46; 111 S.Ct. at 1287-1288; Boisson, 273 F.3d at 270-271.

Cardiology Associates also relies heavily upon Fifth Circuit case law for the principle that "originality . . . means that the material added to what is in the public domain must have aspects of novelty and be something more than a trivial addition or variation.  If what is added does not itself give some value to a public domain composition, or serve some purpose other than to merely emphasize what is present and subsisting in the pubic domain, it is not entitled to copyright."  Donald v. Zack Meyer's T.V. Sales and Service, 426 F.2d 1027, 1030 (5th Cir. 1970); see also Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1995) ("[A] work may be protected by copyright even though it is based on . . . something already in the public domain if the author, through his skill and effort, has

contributed a distinguishable variation from the older works.  However, a 'distinguishable variation' must be substantial and not merely trivial.").  These cases are easily distinguishable.  In <u>Donald</u>, the court concluded that the plaintiff's form contracts were insufficiently original to merit copyright protection.  Yet, this determination was based on an examination of the plaintiff's forms and specific earlier works.  <u>Donald</u>, 426 F.2d at 1029.  In <u>Little</u>, the court was able to compare the alleged infringing ribbon flowers with the ribbon flowers that already existed in the public domain and concluded that there was nothing new in the design of the flowers themselves.  <u>Little</u>, 51 F.3d at 48.  In our case, as discussed in much greater detail above, this Court is unable to compare Robison's letters with specific earlier works that existed in the public domain prior to the creation of her letters.

### b.    Minimal Degree of Creativity.

Cardiology Associates contends that Robison's deposition testimony establishes that her letters lack creativity.  During her deposition, Robison was repeatedly asked what made her letters different from any other collection letter; what novelty or originality did her thought process add to the letters; and what about the letters was novel.  First, many of these questions go to novelness and the <u>Feist</u> court clearly held that originality does not require a showing of novelty.  <u>See Feist Publications, Inc.</u>, 499 U.S. at 345; 111 S.Ct. at 1287.  Moreover, Robison's answers to this line of questioning demonstrate what is original about her letters – the phraseology and expression of the collection concepts contained in the letters.  <u>See Mason v. Montgomery Data, Inc.</u>, 967 F.2d 135, 138 (5th Cir. 1992) (discussing the idea/expression merger doctrine).  It is true that the concept contained in her letters is contained in all collection letters – you owe money, we would like to work with

you, but if you do not pay we will sue.  Yet, Robison is not claiming a copyright in the concept, but rather her expression of that concept.  See Mazer v. Stein, 347 U.S. 201, 217, 74 S.Ct. 460, 470 (1954).  Her expression of the collection concept was meant to be sympathetic, unoffending, cooperative, and non-threatening.  Again, she was "trying to give the patients options without making them feel threatened."  Record Document 8, Exhibit I at 51.  Cardiology Associates cannot defeat Robison's copyright by its allegation that the ideas and concepts in Robison's letters can be found in earlier public domain letters.  See Kamar International, Inc. v. Russ Berrie & Co., 657 F.2d 1059, 1061 (9th Cir. 1981).  The copying of an idea but not of its expression does not constitute infringement.  See 3-12 Nimmer on Copyright § 12.11 n. 51.3.  Likewise, the copying of the idea but not the expression from a prior work does not derogate from originality.  See id.

Here, the particular way that Robison chose to express her ideas, no matter if those ideas were in the public domain, is original to her.  It required some degree of creativity on her part to select the language, terminology, and phraseology that she used to express those ideas.  This expression is what plaintiff sought to protect via copyright.  Even Dr. Perlman, the defense expert, stated that Robison's letters "contained . . . some degree of creativity in the phraseology of the content of [the] letters" and that the author of such letters exhibited "at least a minimal degree of creativity" in creating the letters.  Record Document 65, Exhibit D at 89-90.

Based on the foregoing, this Court finds that Cardiology Associates has not come forward with enough evidence to rebut the Section 410(c) presumption with respect to originality.  Cardiology Associates has failed to come forward competent summary judgment evidence establishing the content of the public domain as it existed prior to the

creation of Robison's letters or that Robison copied from such public domain letters. Moreover, in light of the terminology and phraseology of Robison's letters which expressed a sympathetic, unoffending, cooperative, and non-threatening collection concept, Cardiology Associates has not come forward with evidence to defeat the presumption that Robison's letters contained at least some minimal degree of creativity. Summary judgment in favor of Robison on the issue of originality is granted.

### 2.     Copyrightability.

It is clear from a review of the Second Motion for Summary Judgment that Cardiology Associates seeks summary judgment on the issue of originality. Yet, a similar request on the issue of copyrightability is not so apparent. At times, it appears that Cardiology Associates has merged the elements of originality and copyrightability. See Record Document 63-2 18-19. In its motion, Cardiology Associates states:

> It is undisputed that plaintiff has registered what purports to be a copyright of these letters with Copyright Office. However, the Copyright Office can register only works where "the material deposited constitutes copyrightable subject matter." 17 U.S.C. § 410(a). That issue is a question of law for this Court to decide.    1 M. Nimmer, Copyright § 12[10][B][3] (1973); Hoehling v. Universal City Studios, Inc., 618 F.2d 972, (2nd Cir.), cert. denied, 449 U.S. 841, 66 L. Ed. 2d 49, 101 S. Ct. 121 (1980).
>
> Simply put, plaintiff's purportedly copyrighted letters are nothing more than standard, run-of-the-mill collection letters. Plaintiff is attempting to copyright something that has been in the public domain for decades and to which she has added nothing new, original, or novel. This exercise of judgment and discretion by the plaintiff (or, more specifically, the lack thereof) is not the type of "original work" that is intended to be protected by the Copyright Act.

Id. at 19. The Court construes this argument as Cardiology Associates' request for summary judgment on the issue of copyrightability.

Title 17 U.S.C. § 410(a) states that "when, after examination, the Register of

Copyrights determines that, in accordance with the provisions of this title, ***the material deposited constitutes copyrightable subject matter*** and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration."  17 U.S.C. § 410(a) (emphasis added).  Under Section 410(a), the Copyright Office conducts "a substantive examination within its particular expertise to determine validity:  whether the work falls within the subject matter of copyright." 3-12 Nimmer on Copyright § 12.11.  Further, the statute clearly states that a certificate will be issued only if the material deposited constitutes copyrightable subject matter.  Robison was issued such a certificate in 1990.  Thus, there is not only the Section 410(c) presumption in place, but also a strong indication that the Copyright Office determined that Robison's collection letters were copyrightable subject matter.

The Court considered, and ruled on, Cardiology Associates' argument that the copyrighted letters are standard, run-of-the-mill collection letters in its analysis of the originality issue.  Yet, in the context of copyrightability, Cardiology Associates' bare assertions are simply not enough to carry their burden of rebutting the statutory presumption of validity on the issue of copyrightability.  Cardiology Associates has offered no proof to overcome the presumption and/or the Copyright Office's determination that Robison's collection letters were copyrightable.  Accordingly, summary judgment in favor of Cardiology Associates on the issue of copyrightability must be denied.

### 3.    Compliance with Statutory Formalities.

Again, under Section 410(c), there is a presumption in favor of Robison that she has complied with all statutory formalities, including notice formalities under 17 U.S.C. §

405(a).[6] Cardiology Associates may rebut this presumption by showing, for example, that she did not register her work within five years after first publication.  See Broadcast Music, Inc. v. Rockingham Venture, Inc., 909 F.Supp. 38, 43 (D.N.H.1995).  Based on the deposition testimony set forth in the factual background section of the instant Memorandum Ruling, Cardiology Associates contends that Robison's letters were published in the 1970s, thereby placing the letters in the public domain without proper copyright notice and invalidating any copyright protection.  See 17 U.S.C. § 405(a).

---

[6]17 U.S.C.A. § 405 states:

(a)    Effect of Omission on Copyright.–With respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, the omission of the copyright notice described in sections 401 through 403 from copies or phonorecords publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if–

    (1)    the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or

    (2)    registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered; or

    (3)    the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies or phonorecords, they bear the prescribed notice.

Conversely, Robison maintains that her deposition testimony is ambiguous and later affirmatively stated in an affidavit that the copyrighted letters were not in existence when she worked for Hollier & Marks in the 1970s and that she did not publish the letters prior to the time she filed her copyright application. In that same affidavit, Robison attested that none of the collection letters disseminated by Hollier and Marks contained any copyright notice. See Record Document 67, Exhibit 2.

At this stage, the Court believes that Cardiology Associates has rebutted the Section 410(c) presumption as to compliance with statutory formalities, specifically notice under Section 405(a). At a minimum, there is a genuine issue of material fact as to when the copyrighted letters were created and when they were first published - the 1970s or 1986. This threshold factual determination must be resolved by the trier of fact before this Court can determine if Robison lost her copyright protection by placing her letters in the public domain in the 1970s. The factual determination is also key in determining whether Robison falsely swore on the application for registration of copyright that the letters were created in 1986 when, in fact, they were created in the 1970s.[7] Accordingly, summary judgment on the issue of compliance with statutory formalities is denied.

**B.    Unauthorized Copying.**

Copying is a "shorthand reference to the act of infringing any of the copyright owner's . . . exclusive rights" under 17 U.S.C. § 106. Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3rd Cir. 2002). Of relevance here,

---

[7]"The presumption generally is not overcome by an 'innocent misstatement.' It may be overcome, however, by proof of deliberate misrepresentation." Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 455 (2nd Cir. 1989).

Section 106 provides:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> > (1)    to reproduce the copyrighted work in copies or phonorecords;
> >
> > (2)    to prepare derivative works based upon the copyrighted work; [and]
> >
> > (3)    to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

17 U.S.C. § 106 (1-3).

Direct evidence of copying is rarely available; thus, "factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." Peel & Co., Inc., 238 F.3d at 394.  In determining access, the court must weigh "whether the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work." Id.  Further, in the Fifth Circuit, "if the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." Id. at 395. The probative similarity element necessitates "a showing that the works, when compared as a whole, are adequately similar to establish appropriation." General Universal Systems, Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (internal quotations omitted).

Once a plaintiff establishes factual copying, she must then show that the copying is legally actionable by demonstrating that the allegedly infringing work is substantially similar to protectable elements of the infringed work. See id. at 142; Peel & Co., Inc., 238 F.3d at 395.  Here, "a side-by-side comparison must be made between the original and the

copy to determine whether a layman would view the two works as substantially similar."
Id.  Typically, the question of substantial similarity is for the trier of fact, yet "summary
judgment may be appropriate if the court can conclude, after viewing the evidence and
drawing inferences in a manner most favorable to the nonmoving party, that no reasonable
juror could find substantial similarity of ideas and expression."  Id.

In this case, the record evidence easily establishes that Cardiology Associates had
access to Robison's collection letters.  The letters were on Cardiology Associates' billing
computer software   during Robison's employment.   After her termination, Robison
requested that the letters be removed from the computer software and that her hard copies
be returned.  See Record Document 8, Exhibit I at 43-44.  Robison never received her hard
copies and Cardiology Associates did not contact its computer service about changing its
collection letters until September 2004.  See id., Exhibit I at 44-45; Record Document 64,
Exhibit C & Exhibit D at 21-23.  Based on this evidence, Cardiology Associates had more
than a reasonable opportunity to view the copyrighted work.  See Peel & Co., Inc., 238
F.3d at 394.  Summary judgment is therefore granted on the issue of access.

Yet, the Court declines to make such a finding on the issues of probative similarity
and substantial similarity.  A side-by-side comparison of the letters contained in Record
Document 64, Exhibit E (the two letters Cardiology Associates sent to its delinquent
accounts between May 2004 and January 2005) and Exhibit F (Robison's copyrighted
letters) does, in fact, show similarities.  See Record Document 81, Exhibit A.  Cardiology
Associates' letters carry over a misspelling of the word "undue" from Robison's letter.  See
id.  Moreover, one of Cardiology Associates' letters is exactly the same as one of
Robison's letters except for the deletion of four words.  See id.  Yet, this Court is reluctant

to make subjective determinations regarding the similarity between the two sets of letters. The Court must also view the evidence and draw inferences in favor of Cardiology Associates, the nonmoving party on the issue of copying.  Because findings of probative and substantial similarities are based on subjective determinations and in light of the legal standard applicable, the Court finds that reasonable jurors could differ on their findings as to whether the two sets of letters are probatively and /or substantially similar.  Accordingly, summary judgment on the issues of probative similarity and substantial similarity must be denied.

## CONCLUSION

For the foregoing reasons, the Court denies the Second Motion for Summary Judgment (Record Document 63) filed by Cardiology Associates.  Robison's Motion for Partial Summary Judgment with Regard to Copying (Record Document 64) is granted on the issue of access and denied on the issues of probative similarity and substantial similarity.  Robison's Motion for Partial Summary Judgment with Regard to Originality (Record Document 65) is granted.   This case will proceed to jury trial on the following issues:   (1) infringement, specifically (a) whether Robison complied with statutory formalities, such that she owns a valid copyright, and (b) the issues of probative similarity and substantial similarity; (2) willfulness; and (3) damages.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 1st day of February, 2008.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE